UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No._____—Civ—\_\_\_\_/\_\_\_\_\_

IN ADMIRALTY

ELIZABETH GEIGER,

     Plaintiff,

vs.

NORWEGIAN CRUISE LINE,

     Defendant.

_____/

# COMPLAINT

Plaintiff, Elizabeth Geiger, sues Defendant, Norwegian Cruise Line (NCL), and alleges:

## A. Case Summary

1.  This is a personal-injury/negligence action brought by a cruise-ship passenger against a cruise line after the passenger slipped and fell on wet, unsafe flooring.

## B. Subject-Matter Jurisdiction: Admiralty

2.  NCL's negligence occurred on a ship sailing in navigable waters and engaging in an activity—pleasure cruising—bearing a substantial relationship to traditional maritime activity, so this action falls within the district court's admiralty jurisdiction and is governed by the general maritime law.

## C. Personal Jurisdiction

3.  NCL is a corporation headquartered in Miami, Florida, and its principal place of

business is in Miami, Florida, so it is subject to general in-personam jurisdiction in this judicial district. *E.g., Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

## D. Venue

4.  Because, under 28 U.S.C.§ 1391(c)(2), NCL is deemed for venue purposes to reside in this judicial district, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1).

## E.  Three Counts of Negligence

### Count 1
### Substandard, Unsafe Flooring

5.  The Defendant, NCL, owns and operates a cruise ship, the *Norwegian Epic*, that sailed from Port Canaveral, Florida, on March 22, 2025, on a seven-day Caribbean cruise.

6.  The Plaintiff, Elizabeth Geiger, and her husband, Glen Geiger, were fare-paying passengers on that cruise.

7.  On or around the fourth day of the cruise, March 25, 2025, while the ship sailed in navigable waters in the Caribbean, Ms. Geiger slipped and fell on a wet and extremely slippery floor on the ship's fifteenth floor.

8.  **Damages:** When the sixty-seven-year-old Ms. Geiger fell, she fractured several ribs (displaced fractures), injured the back of her head, injured her back, neck, and left elbow, and badly fractured her left fifth finger. She also suffered deep, black-and-blue hematomas along the left side of her body, as well as on both arms and forearms. Her left hip area was extremely swollen and very black and blue, and extremely painful. And her left elbow bled profusely. After falling, she was rushed to the ship's medical center, where she received emergency treatment, and was released to her cabin and told to see an orthopedic surgeon as soon as she got home. The debilitating pain from these injuries—especially the broken ribs—has prevented Ms. Geiger from getting a single good-night's sleep since the accident. That sleep deprivation is taking a daily toll on Geiger's physical and mental health and has significantly slowed her healing.

9.  **Damages (cont'd):** In this accident, Ms. Geiger suffered bodily injury and resulting pain and suffering, disability, physical impairment, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a preexisting condition. The losses are either permanent or continuing and Ms. Geiger will continue to suffer these losses in the future.

10. Ms. Geiger's slip occurred on a section of flooring that transitions from an outdoor-style, grainy, and relatively slip-resistant surface to a smooth and slick indoor-style surface: she slipped after passing from the outdoor-style surface to the indoor-style surface.

11. The problem with the flooring on which Ms. Geiger slipped is that it isn't appropriate for that section of the fifteenth floor because that section, although technically indoors because it's underneath an awning-type covering, is susceptible to getting very wet when wind blows rainwater onto it, and wind often blows rainwater onto it. And that's what happened here: wind had blown rainwater into this indoor area, and when Ms. Geiger stepped into this area, it felt to her as though she were stepping onto a patch of black ice, and her feet instantly shot out from under her—in her words, the floor was "absurdly" slippery. And no wonder: this floor is intended for indoor use—not outdoor, and so when it got covered with rainwater it became like ice.

12. **Duty:** NCL owed Elizabeth Geiger a duty of reasonable care under the circumstances when Geiger was on its ship.

13. **Breach:** NCL breached that duty of care by failing to make this section of flooring sufficiently slip-resistant by, for example, applying friction strips around the floor or adding a gritty floor covering.

14. **Causation:** That breach caused Ms. Geiger to slip and fall and injure herself.

15. **Constructive Notice of Hazard:** If discovery turns up no prior, similar accidents caused by this substandard (for this area) flooring, and if NCL denies having had *actual* knowledge of this slipping hazard at this location, NCL must nevertheless be deemed to have had *constructive* knowledge of this hazard because this flooring isn't new, and rainwater has been blowing into this area on Caribbean cruises during many cruises over many months before this cruise. And during those rainstorms NCL's crew obtained

firsthand knowledge that rainwater blows into this area, and firsthand knowledge that rainwater makes this floor as slippery as ice. And NCL's cleaning crews have likewise experienced firsthand how extremely slippery this floor gets when they wet it during cleaning. In sum, before Ms. Geiger's accident NCL had ample time to recognize this hazard and correct it, and so they must be deemed to have had constructive notice of it.

16. All conditions precedent have occurred or been performed.

Therefore, the Plaintiff, Elizabeth Geiger, demands judgment against the Defendant, NCL, for more than $75,000 in damages, and costs.

## Count 2
## Unsafe Floor Due to Failure to Clean Adequately

17. The Defendant, NCL, owns and operates a cruise ship, the *Norwegian Epic*, that sailed from Port Canaveral, Florida, on March 22, 2025, on a seven-day Caribbean cruise.

18. The Plaintiff, Elizabeth Geiger, and her husband, Glen Geiger, were fare-paying passengers on that cruise.

19. On or around the fourth day of the cruise, March 25, 2025, while the ship sailed in navigable waters in the Caribbean, Ms. Geiger slipped and fell on a wet and extremely slippery floor on the ship's fifteenth floor.

20. **Damages:** When the sixty-seven-year-old Ms. Geiger fell, she fractured several ribs (displaced fractures), injured the back of her head, and injured her back, neck, and left elbow, and badly fractured her left fifth finger. She also suffered deep, black-and-blue hematomas along the left side of her body, as well as on both arms and forearms. Her left hip area was extremely swollen and very black and blue, and extremely painful. And her left elbow bled profusely. After falling, she was rushed to the ship's medical center, where she received emergency treatment, and was released to her cabin and told to see an orthopedic surgeon as soon as she got home. The debilitating pain from these injuries—especially the broken ribs—has prevented her from getting a single good-night's sleep in the weeks that have passed since the accident. That sleep deprivation is taking a daily toll on Geiger's physical and mental health and has significantly slowed her healing.

21. **Damages (cont'd):** In sum, in this accident, Ms. Geiger suffered bodily injury and resulting pain and suffering, disability, physical impairment, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a preexisting condition. The losses are either permanent or continuing and Ms. Geiger will continue to suffer these losses in the future.

22. Ms. Geiger's slip occurred on a section of flooring that transitions from an outdoor-style, grainy, and relatively slip-resistant surface to a smooth and slick indoor-style surface: she slipped after passing from the outdoor-style surface to the indoor-style surface.

23. The problem with the flooring on which Ms. Geiger slipped is that it isn't appropriate for that section of the fifteenth floor because that section, although technically indoors because it's underneath an awning-type covering, is susceptible to getting very wet when wind blows rainwater onto it, and wind often blows rainwater onto it. And that's what happened here: wind had blown rainwater into this indoor area, and when Ms. Geiger stepped into this area, it felt to her as though she were stepping onto a patch of black ice, and her feet instantly shot out from under her—in her words, the floor was "absurdly" slippery. And no wonder: this floor is intended for indoor use—not outdoor, and so when it got covered with rainwater it became like ice.

24. Because the surface of this flooring isn't sufficiently slip-resistant, it is extremely important for NCL to keep this section's floor particularly clean, for when dirt or any foreign substance adheres to a floor, it makes the floor more slippery, especially immediately after the floor gets wet because that's when the water frees the dirt and oils from the pores in the floor's surface, making the water slimy and slippery. (That phenomenon is what makes concrete roads most slippery in the first few minutes after a rain: the rain lifts the dirt out of the road's pores, making it very difficult for tires to grip the road. That hazard subsides within a few minutes, however, once the rain has had time to wash off to the sides of the road. The middle of a road is its highest point—called the road's "crown"; from the crown, the road slopes downward to cause the rainwater— and the dirt the rainwater is carrying—to flow off the road.)

25. **Constructive Knowledge of Hazard:** After Ms. Geiger was discharged from the

ship's medical center, she and her husband returned to examine the floor she'd slipped on. They saw that the floor was very dirty—it appeared to have ingrained, deep-seated dark spots where dirt had become imbedded. It was clear to them that this was the type of deep-seated, imbedded dirt that takes weeks or months to get to this level where it actually darkens the floor.

26. **Constructive Knowledge (cont'd):** When dirt builds up on a floor over a period of weeks and months, by any reasonable measure that amount of time is ample time for a property owner like NCL to become aware of the buildup and take steps to clean it, so NCL must be deemed to have had constructive knowledge of this dirt-buildup hazard.

27. **Duty:** NCL owed Elizabeth Geiger a duty of reasonable care under the circumstances while Geiger was on its ship.

28. **Breach:** NCL breached that duty of care by failing to clean this dirt buildup from this section of flooring, despite having had ample time to do so.

29. **Causation:** That breach caused Ms. Geiger to slip and fall and injure herself.

30. All conditions precedent have occurred or been performed.

Therefore, the Plaintiff, Elizabeth Geiger, demands judgment against the Defendant, NCL, for more than $75,000 in damages, and costs.

## Count 3
## Failure to Warn of Slipping Hazard

31. The Defendant, NCL, owns and operates a cruise ship, the *Norwegian Epic*, that sailed from Port Canaveral, Florida, on March 22, 2025, on a seven-day Caribbean cruise.

32. The Plaintiff, Elizabeth Geiger, and her husband, Glen Geiger, were fare-paying passengers on that cruise.

33. On or around the fourth day of the cruise, March 25, 2025, while the ship sailed in navigable waters in the Caribbean, Ms. Geiger slipped and fell on a wet and extremely slippery floor on the ship's fifteenth floor.

34. **Damages:** When the sixty-seven-year-old Ms. Geiger fell, she fractured several ribs (displaced fractures), injured the back of her head, injured her back, neck, and left elbow, and badly fractured her left fifth finger. She also suffered deep, black-and-blue

hematomas along the left side of her body, as well as on both arms and forearms. Her left hip area was extremely swollen and very black and blue, and extremely painful. And her left elbow bled profusely. After falling, she was rushed to the ship's medical center, where she received emergency treatment, and was released to her cabin and told to see an orthopedic surgeon as soon as she got home. The debilitating pain from these injuries—especially the broken ribs—has prevented her from getting a single good-night's sleep since the accident. That sleep deprivation is taking a daily toll on Ms. Geiger's physical and mental health and has significantly slowed her healing.

35. **Damages (cont'd):** In this accident, Ms. Geiger suffered bodily injury and resulting pain and suffering, disability, physical impairment, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a preexisting condition. The losses are either permanent or continuing and Ms. Geiger will continue to suffer these losses in the future.

36. Ms. Geiger's slip occurred on a section of flooring that transitions from an outdoor-style, grainy, and relatively slip-resistant surface to a smooth and slick indoor-style surface: she slipped after passing from the outdoor-style surface to the indoor-style surface.

37. The problem with the flooring on which Ms. Geiger slipped is that it isn't appropriate for that section of the fifteenth floor because that section, although technically indoors because it's underneath an awning-type covering, is susceptible to getting very wet when wind blows rainwater onto it, and wind often blows rainwater onto it. And that's what happened here: wind had blown rainwater into this indoor area, and when Ms. Geiger stepped into this area, it felt to her as though she were stepping onto a patch of black ice, and her feet instantly shot out from under her—in her words, the floor was "absurdly" slippery. And no wonder: this floor is intended for indoor use—not outdoor, and so when it got covered with rainwater it became like ice.

38. At the time of Ms. Geiger's accident, there were no *Caution Wet Floor* signs, or any other warnings, posted in this area.

39. **Constructive Notice of Hazard:** If discovery turns up no prior, similar accidents

caused by this substandard (for this area) flooring, and if NCL denies having had *actual* knowledge of this slipping hazard at this location, NCL must nevertheless be deemed to have had *constructive* knowledge of this hazard because this flooring isn't new, and rainwater has been blowing into this area on Caribbean cruises during many cruises over many months before this cruise. And during those rainstorms NCL's crew obtained firsthand knowledge that rainwater blows into this area, and firsthand knowledge that rainwater makes this floor as slippery as ice. And NCL's cleaning crews have likewise experienced firsthand how extremely slippery this floor gets when they wet it during cleaning. In sum, before Ms. Geiger's accident NCL had ample time to recognize this hazard and correct it, and so they must be deemed to have had constructive notice of it.

40. **Duty:** NCL owed Elizabeth Geiger a duty of reasonable care under the circumstances when Geiger was on its ship.

41. **Breach:** NCL breached that duty of care by failing to warn passengers such as Ms. Geiger about this section's tendency to get wet—even though it is indoors—and about this section's tendency to get extremely slippery when wet.

42. **Causation:** That breach caused Ms. Geiger to slip and fall and injure herself.

43. All conditions precedent have occurred or been performed.

Therefore, the Plaintiff, Elizabeth Geiger, demands judgment against the Defendant, NCL, for more than $75,000 in damages, and costs.

## F.  Request for Jury Trial

By tradition passed down from the English Admiralty court, litigants in admiralty cases aren't usually given jury trials. *E.g.*, Grant Gilmore & Charles L. Black Jr., *The Law of Admiralty* § 1-4 (2d ed. 1975). But nothing prevents courts from granting jury trials in admiralty cases: "[N]either [the Seventh] Amendment nor any other provision of the Constitution forbids [jury trials in admiralty cases]." *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963) (allowing seaman a jury trial on both his maintenance-and-cure claim and his Jones Act claim). And in this action, it is only the happenstance lack of diversity of citizenship that is preventing the Plaintiff from obtaining a jury trial as a matter of right. Moreover, but for the forum-selection clause in NCL's ticket contract, which requires actions like this to be brought in federal court in this district, the Plaintiff could

have and would have brought this action in state court, which is her right under the "saving" clause of 28 U.S.C. § 1333(1), and if she'd filed in state court she would get a jury trial as a matter of right. Therefore, given Congressional intent to give plaintiffs jury trials in cases like this, and given our justice system's reverence for trial by jury, Ms. Geiger respectfully asks the Court to grant her a jury trial here.

Dated: May 6, 2025.                           Respectfully submitted,

                                              **Peter G. Walsh**
                                              Peter G. Walsh (Fla. Bar No. 970417)
                                              pwalsh@thecruiseinjurylawfirm.com
                                              The Cruise Injury Law Firm PA
                                              2915 Biscayne Blvd., Suite 300
                                              Miami, FL 33137
                                              786-877-2411
                                              Attorney for Plaintiff, Elizabeth Geiger